STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert Jamont WRIGHT, Defendant-Appellant.†

Court of Appeals

*No. 03–0238–CR. Submitted on briefs October 8, 2003.—
Decided November 26, 2003.*

2003 WI App 252

(Also reported in 673 N.W.2d 386.)

† Petition to review denied 2-24-04.

698

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ann Auberry,* of *Rebholz & Auberry* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *Edwin J. Hughes,* assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J. Robert Jamont Wright appeals from a judgment of conviction for eight counts of armed robbery and one count of attempted armed

robbery, all as a habitual offender. Wright additionally appeals from a trial court order denying his motion for postconviction relief based on his claim of ineffective assistance of counsel. Wright was convicted following a six-day jury trial at which the State presented seventeen eyewitnesses who identified Wright as the robber.

¶ 2. Wright contends that his trial counsel was ineffective for failing to more timely secure an eyewitness identification expert and for failing to obtain a pretrial ruling as to the admissibility of testimony from Terrell Lomack, the victim of a further robbery who initially identified Wright as the perpetrator at a lineup, but later was unable to identify Wright at a preliminary hearing.

¶ 3. Apart from his claim of ineffective assistance of counsel, Wright argues that the trial court erred by excluding Lomack's testimony as improper impeachment of the identifications made by the State's various witnesses and improper "other acts" evidence that the Lomack robbery was committed by an unknown third party pursuant to *State v. Scheidell*, 227 Wis. 2d 285, 595 N.W.2d 661 (1999). In addition, Wright argues that the trial court erred by granting the State a continuance to prepare for Wright's expert on eyewitness identification. Finally, Wright asks that we order a new trial in the interests of justice.

¶ 4. We reject each of Wright's challenges and affirm the judgment and order.

### BACKGROUND

¶ 5. This case has a lengthy, but essentially undisputed, history. A string of armed robberies occurred in the city of Racine between May 8, and May 19, 2000. Wright was arrested as a suspect in the robberies on

May 20, 2000, and participated in a lineup with five other individuals on May 23, 2000. Most of the victims identified Wright as the robber. As a result, the State filed a complaint charging Wright with nine counts of armed robbery with threat of force contrary to WIS. STAT. § 943.32(2) (2001–02),[1] as a habitual offender pursuant to WIS. STAT. § 939.62.

¶ 6. At the preliminary hearing on July 31, 2000, Lomack, a victim of one of the robberies, failed to appear. Therefore, the magistrate did not find probable cause as to the Lomack count. As to the remaining eight counts, Wright was bound over for trial. Despite the magistrate's ruling that the State had not established probable cause as to the Lomack count, the Information alleged that count together with the other counts on which Wright had been bound over. In addition, the Information added a tenth count of armed robbery with threat of force and an eleventh count of attempted armed robbery with threat of force, both as a habitual offender.

¶ 7. In response, Wright moved to dismiss the Lomack count based on the magistrate's determination that the State had not established probable cause as to that count.[2] The trial court granted this motion.

¶ 8. Wright additionally moved to suppress evidence obtained by the police on the day he was arrested. Specifically, Wright challenged the evidence obtained by the police prior to the execution of a warrant to search

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version.

[2] Wright additionally filed a motion to sever the crimes or charges and a motion to suppress the eyewitness identifications. Wright withdrew his motion to sever the charges and the remaining motion was denied by the court and Wright does not appeal that ruling.

his apartment. Wright also challenged the evidence recovered pursuant to the warrant on grounds that it was issued without probable cause.

¶ 9. The following testimony was presented at the suppression hearing. Officer William Warmington arrested Wright on May 20, 2000, as Wright was leaving his residence. Warmington directed other officers to secure the residence pending the issuance of a search warrant. The officers who were securing the apartment entered it and detained three or four people who were inside. During the process of securing the apartment, a police officer observed a "Club anti-theft device in the bedroom still in the package" (the Club evidence). The package and price tag matched the description of a Club taken during one of the armed robberies with which Wright was charged. Warmington later returned to the residence with a search warrant and the officers carried out a search pursuant to the warrant.

¶ 10. At the close of the motion hearing, the trial court ruled that there was sufficient probable cause to support the warrant and denied Wright's motion to suppress with respect to the evidence seized as a result of the warrant. However, the trial court granted Wright's motion to suppress the Club evidence, which was seized before the warrant was executed.

¶ 11. The State responded with a motion for reconsideration under the "inevitable discovery" doctrine pursuant to *State v. Lopez*, 207 Wis. 2d 413, 559 N.W.2d 264 (Ct. App. 1996), arguing that the Club evidence would have been inevitably discovered when the lawfully issued search warrant was executed. On reconsideration, the trial court agreed with the State that the Club evidence was admissible under the "inevitable discovery" doctrine. Nonetheless, the court adhered to its ruling barring the Club evidence. The court based

this ruling on two factors: (1) the timing of the State's motion—"slightly more than a week before trial," and (2) the State had not raised the "inevitable discovery" argument at the initial suppression hearing. Under these circumstances, the court held that the admission of the Club evidence would unduly and unfairly prejudice the defense.

¶ 12. Following the trial court's ruling, Wright's counsel addressed an unrelated matter pertaining to the Lomack count, which had previously been dismissed. Counsel informed the court that at another preliminary hearing the previous day, Lomack had been unable to identify Wright as the robber.[3] In light of that development, counsel stated that she was reevaluating her initial decision not to use an eyewitness expert and she was trying to contact the expert. If she decided to use the expert, counsel informed the court and the State that she would provide the State with the expert's name the following Monday, January 8, 2001.

¶ 13. Keeping her word, Wright's counsel filed a witness list on January 8, 2001, listing Dr. Gregory Van Rybroek as Wright's eyewitness identification expert.

---

[3] The record is unclear as to how this further preliminary hearing regarding the Lomack count came about. At times, the appellate briefs refer to this preliminary hearing as an "adjourned" hearing. We fail to understand how the preliminary hearing could be adjourned when the magistrate found at the original preliminary hearing that the State had failed to establish probable cause and the trial court later dismissed the charge based upon that finding. A more likely explanation is that the State reissued the Lomack charge against Wright following the trial court's dismissal of that count and a second preliminary hearing ensued. Regardless, the parties do not dispute that a second preliminary hearing on the Lomack count did occur and that Lomack failed to identify Wright at that hearing.

This document further stated that Van Rybroek would "offer testimony about factors contributing to unreliability in eye-witness identifications" and listed certain factors Van Rybroek would address as they affect the reliability of both lineup and subsequent in-court identifications.[4] In addition, the witness list included Lomack, the alleged victim in the count that the trial court had previously dismissed.

¶ 14. On January 12, 2001, the State filed a motion in limine to exclude Van Rybroek's expert testimony. The State argued that the expert testimony was "not outside the realm of ordinary experience and common knowledge and would not assist the jury" and that the testimony pertaining "to the correlation between the witness reporting a positive identification . . . and the actual accuracy of identification would invade the province of the jury by indirectly attacking the credibility of the witnesses."

¶ 15. The trial court addressed the State's motion on January 16, 2001, the opening day of the jury trial. The prosecutor stated that when he had contacted Van Rybroek the previous day, Van Rybroek was unable to state which scientific research he would rely on "because he would need to get information from the defense, look at the facts proposed to him for his review and then look to the research to assist him in forming his opinion." The State argued that Van Rybroek's response left them "at a loss as to [their] ability to

---

[4] The document listed the following factors: (1) cross-racial identification, (2) identification after the witness has been exposed to pictures or other opportunities to view the suspect, (3) time between the initial contact with the suspect and later identification, (4) opportunity to view the suspect and length of contact, (5) focus of witness on another object such as a weapon, and (6) knowledge that the suspect is in the lineup.

obtain rebuttal expert testimony." In response, Wright's counsel explained that she had not, as yet, had Van Rybroek analyze Wright's case due to funding issues and the State's pending motion in limine to exclude Van Rybroek's testimony. Counsel also made an offer of proof as to Van Rybroek's testimony.

¶ 16. After a lengthy consideration of the matter, the trial court determined that Van Rybroek's testimony was relevant and admissible. However, given the late notice to the State, the court was concerned about the State's inability to timely prepare due to lack of knowledge as to the information and data on which Van Rybroek would rely and the State's further inability to retain a rebuttal expert at such a late date. In an attempt to alleviate this concern, the court adjourned the trial until the following day and ordered the defense to make Van Rybroek immediately available to the State for an interview.

¶ 17. When the parties reconvened the following day, the State informed the trial court that it had not received the articles upon which Van Rybroek would rely until earlier that morning at 8:15 a.m. As a sanction for the late revelation of Van Rybroek as a defense expert witness, the State asked the court to bar Van Rybroek's testimony. Alternatively, the State asked that the trial be adjourned.

¶ 18. In response, the trial court confirmed its prior ruling that Van Rybroek's proffered testimony was relevant to Wright's theory of defense and that Wright would be allowed to present the testimony. In addition, the court ruled that although Wright had not revealed Van Rybroek as a witness until shortly before trial, the delay was understandable since the decision to use Van Rybroek was triggered by Lomack's inability to identify Wright at the preliminary hearing, a development

707

which had occurred only a few days earlier. However, because of the technical nature of Van Rybroek's proffered testimony and the State's inability to adequately prepare for the testimony through no fault of its own, the court granted the State's alternative request for an adjournment of the trial. The court stated:

> Based upon the court's underlying obligation here to assure as full and fair a trial as possible I really believe that I have little alternative but to grant a request by the [S]tate for an adjournment of the trial based upon it's representation that it cannot be prepared to adequately deal with Dr. Van Rybroek and his testimony under the circumstances that exist.

¶ 19. After this ruling, Wright conferred with his counsel. Following that consultation, Wright's counsel inquired whether the grant of the adjournment would affect the trial court's prior ruling barring the State from using the Club evidence. The trial court responded that its original ruling suppressing the Club evidence was based on Wright's inability to timely prepare a defense to the evidence. Since an adjournment would give Wright adequate time to prepare for the Club evidence, and since the evidence was otherwise admissible under the "inevitable discovery" doctrine, the court reasoned that there no longer was any basis to exclude the evidence. Faced with the admission of the Club evidence if the trial were adjourned or the loss of Van Rybroek's testimony if the trial went forward, Wright's counsel indicated that the defense would proceed to trial without Van Rybroek's testimony. The trial court confirmed this choice in a personal colloquy with Wright, explaining the implications of the choice. Wright confirmed that he wished to proceed to trial without Van Rybroek's testimony, and a six-day jury trial ensued.

¶ 20. The State's evidence against Wright included the testimony of seventeen eyewitnesses who identified Wright as the robber during each of the nine robberies and the one attempted robbery; videotaped images from surveillance cameras at three of the locations Wright allegedly robbed; clothing found in Wright's possession that matched witness accounts of what the offender was wearing during some of the robberies;[5] testimony from a police officer that Wright had made incriminating statements to a former girlfriend; and an affidavit from the girlfriend detailing these statements.[6]

¶ 21. Before the presentation of Wright's defense, the State objected to Lomack as a defense witness. As noted earlier, Lomack had identified Wright as the robber at the lineup, had failed to appear at the original preliminary hearing resulting in the dismissal of that count, and had failed to identify Wright at the subsequent preliminary hearing. Wright sought to introduce evidence of Lomack's failure to identify him. The State argued that Lomack's inability to identify Wright was irrelevant to the identifications made by the other eyewitnesses and did not impugn the integrity of the lineup procedure. The trial court agreed and barred Lomack's testimony.

---

[5] We note that these videotapes and articles of clothing are not included in the appellate record; however, Wright does not dispute their existence or the State's representation that they were introduced as evidence at trial.

[6] Before introducing the evidence concerning the statements and affidavit given by Wright's girlfriend, the State had called the girlfriend as a witness. During her testimony, she disavowed her affidavit and any knowledge of Wright's incriminating statements.

¶ 22. Wright's counsel then proposed the admission of Lomack's testimony pursuant to *State v. Scheidell*, 227 Wis. 2d 285, 595 N.W.2d 661 (1999), as evidence of other acts committed by an unknown third party. The trial court also rejected Lomack's testimony on this basis, ruling that the evidence did not support a third-party theory.

¶ 23. The jury returned guilty verdicts on eight of the nine counts of armed robbery plus the count of attempted armed robbery. The trial court sentenced Wright to consecutive terms of six years' imprisonment on each of the eight counts of armed robbery. Each sentence consisted of three years of initial confinement followed by three years of extended supervision. Wright was additionally sentenced to a consecutive term of five years on the attempted armed robbery count with two years of initial confinement followed by three years of extended supervision.

¶ 24. On September 17, 2002, Wright filed a post-conviction motion pursuant to WIS. STAT. RULE 809.30, alleging that his trial counsel was ineffective. Specifically, Wright argued that counsel was deficient (1) in failing to secure Van Rybroek as an eyewitness identification expert in a more timely manner, and (2) in failing to seek and obtain a pretrial ruling on the admissibility of Lomack's testimony.

¶ 25. The trial court conducted a *Machner*[7] hearing at which Wright's trial counsel, Diane Zitzner, and Wright's expert, Van Rybroek, testified. At the close of the hearing, the trial court concluded that trial counsel's failure to retain Van Rybroek prior to Lomack resurfacing as a potential defense witness and counsel's

---

[7] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

failure to obtain a pretrial ruling on the admissibility of Lomack's testimony did not constitute deficient performance. Accordingly, the court denied Wright's motion.

¶ 26. Wright appeals from the judgment of conviction and the postconviction order.

## DISCUSSION

### Ineffective Assistance of Counsel

■■■■■■

¶ 27. Criminal defendants are constitutionally guaranteed the right to counsel under both the United States Constitution and the Wisconsin Constitution. U.S. CONST. amends. VI, XIV; WIS. CONST. art. I, § 7. *See State v. Thiel*, 2003 WI 111, ¶ 18, 264 Wis. 2d 571, 665 N.W.2d 305. The right to counsel includes the right to effective assistance of counsel. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). In order to find that counsel rendered ineffective assistance, the defendant must show that trial counsel's representation was deficient. *Thiel*, 264 Wis. 2d 571, ¶ 18. The defendant must also show that he or she was prejudiced by the deficient performance. *Id.* The United States Supreme Court has stated that "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *State v. Weed*, 2003 WI 85, ¶ 34, 263 Wis. 2d 434, 666 N.W.2d 485 (citing *Strickland*, 466 U.S. at 697).

■■■■■■

¶ 28. Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness. *Thiel*, 264 Wis. 2d 571, ¶ 19. When evaluating counsel's performance, courts are to be "highly deferential" and must avoid the "distorting effects of hindsight."

*Id.* (citation omitted). "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." *Id.* (citing *State v. Williquette,* 180 Wis. 2d 589, 605, 510 N.W.2d 708 (Ct. App. 1993), *aff'd,* 190 Wis. 2d 677, 526 N.W.2d 144 (1995)).

¶ 29. In order to demonstrate that counsel's deficient performance is constitutionally prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Thiel,* 264 Wis. 2d 571, ¶ 20 (citing *Strickland,* 466 U.S. at 694). The focus of this inquiry is not on the outcome of the trial, but on "the reliability of the proceedings." *Thiel,* 264 Wis. 2d 571, ¶ 20 (citing *State v. Pitsch,* 124 Wis. 2d 628, 642, 369 N.W.2d 711 (1985)).

¶ 30. A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Thiel,* 264 Wis. 2d 571, ¶ 21. This court will uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* Findings of fact include "the circumstances of the case and the counsel's conduct and strategy." *Id.* (citation omitted). Whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law which we review de novo. *Id.*

### Van Rybroek's Expert Testimony

¶ 31. Wright first argues that trial counsel was ineffective for failing to earlier retain Van Rybroek as an expert on eyewitness identification. Wright's reason-

712

ing is two-tiered: (1) if trial counsel had retained Van Rybroek early in the case, there would have been no need for the trial court to grant an adjournment to allow the State time to prepare; and (2) therefore, Wright would not have been faced with the dilemma of having to choose between defending against the Club evidence under the adjournment or foregoing Van Rybroek's expert testimony if the trial proceeded without the adjournment.

¶ 32. Trial counsel's testimony at the *Machner* hearing established the following. Counsel had originally considered using an eyewitness expert. However, counsel ultimately made the strategic decision to abandon that approach, believing that she could score many of the same points with the jury through cross-examination of the eyewitnesses. In fact, counsel had earlier challenged the lineup in a motion to suppress arguing that the lineup was suggestive. In preparation for that strategy, counsel had done significant research on identification issues.

¶ 33. Counsel changed her strategy and sought to use Van Rybroek as an expert witness only after Lomack resurfaced as a potential defense witness slightly more than one week before the trial following his inability to identify Wright at the January 4, 2001 preliminary hearing. Based on this development, counsel sought funding through the State Public Defender's Office and contacted Van Rybroek. Counsel determined that an expert such as Van Rybroek would be helpful as Lomack now provided a "concrete example of some of the concepts" surrounding eyewitness identification.

¶ 34. The trial court determined that trial counsel's initial decision not to retain an expert on eyewitness identification did not constitute deficient performance. The court found that counsel was experi-

enced in criminal defense work and had conducted research of the law and related materials in the area of eyewitness identification and identification procedures used by law enforcement. The court stated that counsel did not overlook the prospect of hiring an expert, but instead reasoned that the mistaken identification defense "could be adequately presented and advanced without the utilization of an eye witness identification expert." The court additionally noted that counsel was presumably aware that the admissibility of expert testimony on eyewitness identification is uncertain. Certain cases have excluded the use of such experts. *See State v. Wilson,* 179 Wis. 2d 660, 508 N.W.2d 44 (Ct. App. 1993); *State v. Blair,* 164 Wis. 2d 64, 473 N.W.2d 566 (Ct. App. 1991).

██ ██

¶ 35. Wright's appellate argument rests largely on Van Rybroek's testimony at the *Machner* hearing, which documents the unreliability of eyewitness testimony. However, as the trial court aptly observed, trial counsel's decision to forego an expert was made *prior* to Lomack surfacing as a potential witness and *prior* to the trial court's ruling that Van Rybroek's testimony was admissible under those changed circumstances. We assess the quality of counsel's performance by the standard of whether such performance was reasonable under the prevailing circumstances. *See State v. Brewer,* 195 Wis. 2d 295, 300, 536 N.W.2d 406 (Ct. App. 1995). Even if it appears in hindsight that another defense would have been more effective, counsel's strategic decision will be upheld as long as it is founded on rationality of fact and law. *Id.* We conclude that counsel's decision was appropriately founded and did not constitute deficient performance. Given the circumstances at the time, given trial counsel's experience, and

given counsel's research in the area of eyewitness identification, we uphold the trial court's finding that counsel's decision to forego expert testimony in favor of impugning the eyewitness identifications on cross-examination was a reasonable strategy.[8]

### Lomack's Proffered Testimony

¶ 36. Wright next argues that trial counsel was ineffective for failing to seek and obtain a pretrial ruling via a motion in limine regarding the admissibility of Lomack's testimony once he resurfaced as a possible defense witness. Wright argues that had he known that Lomack's testimony would be barred, he would have opted for the adjournment and thereby had the benefit of Van Ryboeck's testimony.

 

¶ 37. The purpose of the motion in limine is to obtain an advance ruling on admissibility of certain evidence. *State v. Horn*, 139 Wis. 2d 473, 488 n.8, 407 N.W.2d 854 (1987). The use of the motion in limine has expanded from its original use for suppressing prejudicial evidence to obtaining a ruling on admissibility generally. Although the Wisconsin Statutes do not ex-

---

[8] We therefore need not reach Wright's argument that he was subsequently prejudiced by counsel's decision which "deprived him of the opportunity to utilize the expert's testimony and take advantage of a beneficial evidentiary ruling regarding the 'Club.' " *See State v. Weed*, 2003 WI 85, ¶ 34, 263 Wis. 2d 434, 666 N.W.2d 485 (there is no reason to address both the deficient performance and prejudice components of the ineffective assistance of counsel inquiry if the defendant makes an insufficient showing of one).

pressly recognize the motion in limine, we judicially notice that its use is common in this state and in many jurisdictions. *See id.*

¶ 38. Despite the expanded use of the motion in limine in current times, we agree with the trial court that trial counsel was not ineffective for failing to obtain a pretrial ruling regarding the admissibility of Lomack's expected testimony. Trial counsel testified that from the moment Lomack resurfaced as a potential witness, she believed his testimony was admissible. Therefore, she did not see the need for a motion in limine ruling. The trial court agreed, ruling that trial counsel's failure to obtain a pretrial ruling as to the admissibility of Lomack's testimony did not constitute deficient performance. The court found that trial counsel's decision was based on her experience and her understanding of the law and of the rules of evidence. Although the trial court ultimately ruled the testimony inadmissible, the court nonetheless stated, "there was nothing about it that seemed so questionable or nothing about it that raised a red flag that alerted her to the fact that it may be appropriate to seek a pretrial ruling." The court further stated, "[T]he fact that the court made a ruling adverse or contrary to what she reasonably believed would be the ruling does not mean that her judgment was deficient."

¶ 39. We agree. To hold otherwise would suggest that lawyers should seek pretrial rulings on all evidentiary issues that *might* inspire an objection at trial. As the trial court recognized, "It would be creating a situation where counsel at the peril of being accused of being ineffective would have to try their case to the court to find out what was going to come in before they tried it to a jury. [T]hat is not what the law requires."

716

¶ 40. While the following list is not exhaustive, we view a motion in limine as proper where (1) the trial court has directed that the evidentiary issue be resolved before trial; (2) the evidentiary material is highly prejudicial or inflammatory and would risk a mistrial if not previously addressed by the trial court, *see id.;* (3) the evidentiary issue is significant and unresolved under existing law; (4) the evidentiary issue involves a significant number of witnesses or a substantial volume of material making it more economical to have the issue resolved in advance of trial so as to save the time and resources of all concerned; or (5) a party does not wish to object to the evidence in the presence of the jury and thereby preserves the issue for appellate review by obtaining an unfavorable ruling via a pretrial motion in limine, *see State v. Bergeron,* 162 Wis. 2d 521, 528–29, 470 N.W.2d 322 (Ct. App. 1991). We do not view Lomack's proffered testimony as qualifying under any of these considerations. Therefore, counsel was not deficient for failing to obtain a pretrial ruling as to the admissibility of Lomack's testimony.

¶ 41. Even if we were to assume that trial counsel was ineffective, we hold that Wright was not prejudiced. Wright reasons that if counsel had obtained a pretrial ruling that Lomack's testimony was inadmissible, he would have opted for an adjournment of the trial, thereby obtaining the benefits of Van Rybroek's testimony. Wright's contention defies common sense and sound judgment. If Wright had opted for the adjournment, the State would have been allowed to use the Club evidence. As trial counsel aptly testified at the *Machner* hearing, this evidence would have been the "death knell" to Wright's defense since it directly linked

him with one of the robberies. No reasonable jury would have favored Van Rybroek's expert testimony over the "smoking gun" Club evidence.

## *Trial Court Rulings*

### *Exclusion of Lomack's Testimony*

¶ 42. Apart from his claim of ineffective assistance of counsel, Wright directly challenges the trial court's exclusion of Lomack's testimony. Generally, a trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has a reasonable basis and was made in accordance with accepted legal standards and in accordance with the facts of record. *State v. Miller*, 2002 WI App 197, ¶ 44, 257 Wis. 2d 124, 650 N.W.2d 850, *review denied*, 2002 WI 121, 257 Wis. 2d 118, 653 N.W.2d 890 (Wis. Sept. 26, 2002) (No. 01–1406–CR). However, where the focus of the claim is on the constitutional right of a defendant to present a defense, the issue is one of constitutional fact. *Id.*

¶ 43. Wright argues that Lomack's testimony was relevant on the issue of whether the police lineup was suggestive. In assessing relevance, the trial court must determine whether the evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Wis. Stat. § 904.01. Here, Lomack's testimony was proffered for the purpose of describing the lineup and stating his belief that he had mistakenly identified Wright in the lineup. However, our examination of the Lomack offer

of proof reveals nothing that impugns the integrity of either the lineup procedure or the in-court identifications by the State's eyewitnesses. In summary, without more, Lomack's inability to identify Wright at a preliminary hearing some eight months after he identified Wright at a lineup does not render the identifications of the other eyewitnesses suspect. We agree with the trial court that Lomack's testimony on the dismissed robbery charge as to the lineup procedure and his mistaken identification did not tend to make Wright's involvement in the other robberies, at which Lomack was not present, more or less probable.

¶ 44. Alternatively, Wright argues that Lomack's testimony was admissible as other acts evidence of a third-party perpetrator pursuant to *Scheidell*. *Scheidell* involved the admissibility of other acts evidence committed by an unknown third party, which was proffered by the accused on the issue of identity. *Id.* at 287. The supreme court set forth a three-step analytical framework to be applied when a defendant proffers such other acts evidence. *Id.* at 306. The first step is to determine whether the other acts evidence is offered for a permissible purpose under WIS. STAT. § 904.04(2), such as to establish motive, opportunity, plan, knowledge or identity. *Scheidell*, 227 Wis. 2d at 306. The second step is to determine whether the other acts evidence is relevant such that it relates to a fact or proposition that is of consequence to the determination of the action. The final step is to determine the probative value of the proffered testimony or its tendency to make a consequential fact more or less probable than it would be without the evidence. *Id.* at 307. The purpose of this test is to assure that the other acts evidence does more than raise conjecture or speculation. *Id.* at 305.

¶ 45. Wright's argument under *Scheidell* is a non-starter. Without more, we hold that the mere inability of a victim to identify the defendant as the perpetrator of a similar uncharged crime perforce takes the jury into the realm of conjecture or speculation. Unlike *Scheidell*, where the defendant sought to present evidence of a similar crime committed by an unknown third party while the defendant was in jail, *id.* at 291, Lomack's proffered testimony does not demonstrate that Wright was incapable of committing the similar crime. At the most, Lomack's proffered testimony merely shows that he could not identify Wright as the robber; it does not demonstrate that Wright could not have committed the offense. As such, Lomack's testimony does not tend to make a consequential fact more or less probable than it would be absent his testimony. *See id.* at 307. We agree with the State: "When there is a series of similar crimes, the fact that the State is unable to prove that the defendant committed all of the crimes does not tend to establish that the defendant did not commit any of the crimes." Lomack's testimony was not competent other acts evidence under *Scheidell*, and the trial court did not err in excluding it.

### Grant of Adjournment

¶ 46. Wright next contends that the trial court erred in granting the State an adjournment in order to prepare for Van Rybroek's testimony.[9] Wright bases his argument on the fact that he complied with the trial court's order directing him to supply the State with the

---

[9] As noted, the continuance never came about because Wright responded by foregoing Van Rybroek's testimony.

720

names of his witnesses, including Van Rybroek, and the list of the topics about which Van Rybroek would testify. As such, Wright contends that the State was not entitled to a continuance pursuant to Wis. Stat. § 971.23(2m)(a) and (am).[10]

¶ 47. Wisconsin Stat. § 971.23 governs discovery and inspection. It provides in relevant part:

> **(2m)** What a defendant must disclose to the district attorney. Upon demand, the defendant or his or her attorney shall, within a reasonable time before trial, disclose to the district attorney and permit the district attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the defendant:

> (a) A list of all witnesses, other than the defendant, whom the defendant intends to call at trial, together with their addresses. This paragraph does not apply to rebuttal witnesses or those called for impeachment only.

> (am) Any relevant written or recorded statements of a witness named on a list under par. (a), including any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony, and including the results of any physical or mental examination, scientific test, experiment or comparison that the defendant intends to offer in evidence at trial.

---

[10] On a threshold basis, the State argues that Wright waived his right to challenge the adjournment on appeal because he did not raise his objection before the trial court. While we agree with the State, we nevertheless address the merits of the issue in rejecting Wright's challenge to the adjournment. *See State v. Caban*, 210 Wis. 2d 597, 609, 563 N.W.2d 501 (1997) (An appellate court has the power in the exercise of its discretion to consider issues raised for the first time on appeal.).

¶ 48. Wright correctly observes that a continuance is a potential sanction pursuant to Wis. Stat. § 971.23(7m) for failing to comply with discovery. However, the record reflects that the trial court was not sanctioning the defense when it granted the State a continuance. Rather, the trial court expressly found that the circumstances were not the fault of either party—the defense had complied with disclosure and the State had made reasonable attempts to ascertain the substance of the expert's testimony. The trial court also noted the complexity of the expert testimony and the materials on which the expert would rely. In sum, the court's decision was expressly based on its "obligation . . . to assure as full and fair a trial as possible."

¶ 49. A motion for continuance is directed to the sound discretion of the trial court whose ruling will not be reversed on appeal absent a clear showing of erroneous exercise of discretion. *State v. Anastas*, 107 Wis. 2d 270, 272, 320 N.W.2d 15 (Ct. App. 1982). In addition, Wis. Stat. § 906.11(1) mandates that the trial judge "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to do all of the following: (a) make the interrogation and presentation *effective for the ascertainment of the truth.*" (Emphasis added.) There is no set test for determining whether the trial court erroneously exercised its discretion. Rather, that determination must be made based upon the particular facts and circumstances of each individual case. *Anastas*, 107 Wis. 2d at 272–73.

¶ 50. We disagree with Wright that his compliance with the discovery provisions of Wis. Stat. § 971.23 trumped the trial court's ability to exercise its discretion to grant a continuance order if the circumstances

otherwise called for such action. Such a holding would significantly curtail a trial court's ability to exercise the broad grant of superintending authority over the mode of the trial as conferred by WIS. STAT. § 906.11. Here, the revelation of Van Rybroek as a defense expert witness, although in compliance with § 971.23, nonetheless came at the eleventh hour before trial. Moreover, through no fault of its own, the State had not had an opportunity to review the underlying data upon which Van Rybroek's testimony would rely. Under those circumstances, the trial court was understandably concerned that the search for the truth might well be curtailed and an unfair trial might result. As such, the court properly exercised its discretion by granting a continuance to the State.

### *Reversal in the Interests of Justice*

¶ 51. Finally, Wright requests this court to reverse his conviction in the interests of justice pursuant to WIS. STAT. § 752.35 because the real case or controversy was not fully tried. Wright argues that his defense was "gutted" by his inability to present Van Rybroek's expert testimony and by the trial court's ruling excluding Lomack's testimony. However, while this case was tried without Van Rybroek's testimony, it was also tried without the devastating "smoking gun" evidence represented by the Club evidence. We can hardly say that justice has miscarried under those circumstances. Further, in light of the State's evidence against Wright, including seventeen eyewitness identifications and statements from his former girlfriend stating that Wright acknowledged responsibility for at least four of

the robberies, the exclusion of Wright's expert and Lomack's testimony does not undermine our confidence in the outcome of his trial.

## *CONCLUSION*

¶ 52. We conclude that Wright did receive effective assistance of counsel. We further conclude that the trial court did not err in granting the State a continuance or in excluding Lomack's testimony. Finally, we reject Wright's request to reverse his conviction in the interests of justice.

*By the Court.*—Judgment and order affirmed.