COURT OF APPEALS
DECISION
DATED AND FILED

January 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1577**

Cir. Ct. No. **2015CF635**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICKALE ALONSO HICKS,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Rock County: MICHAEL A. HAAKENSON, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Mickale Alonso Hicks, pro se, appeals a circuit court order denying his postconviction motion under WIS. STAT. § 974.06 (2019-20).[1]  Hicks argues that the court erred in rejecting his claims for ineffective assistance of counsel and newly discovered evidence.  We affirm.

## *Background*

¶2     In 2015, Hicks was charged with felony murder based on allegations that he was involved in an attempted armed robbery that resulted in the shooting death of Joel Royster.  The case proceeded to a jury trial.

¶3     During trial, the State maintained that Hicks had an individual named Stefan Range set up a drug deal with Royster as a pretext to rob Royster, and that Hicks drove Range and others to and from the crime scene in a green Jeep Cherokee.  The State relied on Range's testimony and circumstantial evidence to establish that Hicks orchestrated the drug deal and was the driver of the green Jeep.

¶4     Range provided the following testimony.  Range had purchased marijuana from Royster previously and had hung out with Hicks on prior occasions.  On the day of the shooting, Hicks gave Range a phone to contact Royster to purchase marijuana.  Hicks then drove Range in a green Jeep to meet up with Royster.  Hicks's brother and another individual Range did not know (the "unidentified co-conspirator") were also in the Jeep.  At the scene, Range and the unidentified co-conspirator entered the back seat of Royster's vehicle, behind

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Royster and Jordan Harrell, who was a passenger in Royster's vehicle. The unidentified co-conspirator pulled out a gun, and Royster and the unidentified co-conspirator fought over the gun. Range heard a gunshot. He and the unidentified co-conspirator then ran back to the green Jeep and fled the scene with Hicks driving.

¶5 Harrell, who had been Royster's passenger, provided the following testimony. Harrell was Royster's friend. Two individuals who Harrell did not recognize entered the back seat of Royster's vehicle, and one of them had a gun. There was a struggle over the gun, and everyone got out of Royster's vehicle. The individual who had the gun hit Royster with the gun, which went off, and Royster fell. Both individuals who had entered Royster's vehicle then fled the scene.

¶6 There was testimony from other witnesses indicating that the unidentified co-conspirator who had the gun and shot Royster might have been someone named Eric Ulmer. Hicks did not testify.

¶7 The jury found Hicks guilty of the felony murder charge. The circuit court sentenced Hicks to a thirty-year term of imprisonment.[2]

¶8 In 2020, Hicks filed his WIS. STAT. § 974.06 motion.[3] He claimed that trial counsel was ineffective and that there was newly discovered evidence. Hicks based both claims on an affidavit from an eyewitness named Riley Taylor who had not been called to testify at trial.

---

[2] Hicks was also found guilty on a charge for attempt to possess THC.

[3] We omit procedural history that is not relevant to our analysis.

¶9    In his affidavit, Taylor averred that Eric Ulmer was involved in the shooting, and he further averred that he had misinformed police about what he had witnessed because Ulmer had threatened him. Taylor averred that he decided to come forward with the truth because he wants justice for Royster, who was his friend, and because he is emotionally drained from hiding the truth. Taylor averred that, on the day of the shooting, he saw Range, Ulmer, Royster, and Harrell exit Royster's vehicle. Taylor averred that Range and Ulmer were fighting with Royster, he heard a gunshot, and Royster fell to the ground. Taylor averred that he then saw Range, Ulmer, and Harrell run and enter a vehicle in which someone was waiting in the driver's seat. Taylor averred that he knew the driver was not Hicks because he knew Hicks and was familiar with Hicks's look, demeanor, and build. Taylor averred that the driver of the waiting vehicle was someone he had never seen before, and that he never saw Hicks that day.

¶10    As noted above, the circuit court denied Hicks's postconviction motion. We reference additional facts as needed below.

## *Discussion*

¶11    We turn first to Hicks's claim for ineffective assistance of counsel. We review such claims under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Id.* at 687. We need not address both prongs of the *Strickland* test if the defendant fails to make a sufficient showing on one. *See id.* at 697. "Whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law which we review de novo." *State v. Wright*, 2003 WI App 252, ¶30, 268 Wis. 2d 694, 673 N.W.2d 386.

¶12    Hicks argues that trial counsel was ineffective by failing to call Taylor to testify at trial. He argues that with Taylor's testimony that he was not the driver for corroboration, Hicks would have testified too, and his defense would have been much stronger.

¶13    We conclude that Hicks fails to satisfy the deficient performance prong of the *Strickland* test. To establish deficient performance, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Here, Hicks provides no basis to conclude that counsel knew or should have known at the time of trial that Taylor had misinformed police or had been threatened by Ulmer. Neither Taylor's affidavit nor Hicks's arguments indicate that Taylor disclosed the information in his affidavit to anyone prior to 2019. Hicks asserts that the information "was never heard by investigators or trial counsel." Absent any basis to conclude that counsel knew or should have known the information in Taylor's affidavit, counsel's failure to call Taylor as a witness was not objectively unreasonable.

¶14    We turn to Hicks's newly discovered evidence claim. When moving for a new trial based on newly discovered evidence, a defendant must prove: "'(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (quoted source omitted). "If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *Id.*

¶15 We assume without deciding that Hicks has satisfied each of the first four prongs of the newly discovered evidence test. Even so, Hicks fails to persuade us that there is a reasonable probability that a jury hearing the new evidence would have a reasonable doubt as to his guilt.[4]

¶16 The question is whether "'there is a reasonable probability that a jury, looking at both the [old evidence] and the [new evidence], would have a reasonable doubt.'" *State v. Love*, 2005 WI 116, ¶44, 284 Wis. 2d 111, 700 N.W.2d 62 (quoted source omitted). Hicks argues that there is a reasonable probability that the jury would have a reasonable doubt as to his guilt because Taylor's testimony would establish that Hicks was not the driver of the green Jeep

---

[4] The applicable standard of review has been characterized in different ways in the case law. Some cases state that the reasonable probability determination is a question of law we review de novo. *See, e.g.*, *State v. Plude*, 2008 WI 58, ¶33, 310 Wis. 2d 28, 750 N.W.2d 42. Other cases indicate that we review this determination for an erroneous exercise of discretion by the circuit court. *See State v. Avery*, 2013 WI 13, ¶32, 345 Wis. 2d 407, 826 N.W.2d 60 ("When weighing the new evidence against the evidence presented at trial, we cannot say that the circuit court erroneously exercised its discretion when it concluded that the photogrammetry evidence would not create a reasonable doubt in the minds of the jury." (emphasis omitted)); *State v. Edmunds*, 2008 WI App 33, ¶16, 308 Wis. 2d 374, 746 N.W.2d 590 (appearing to apply a discretionary standard of review to the circuit court's determination that "there was not a reasonable probability a new result would be reached with a new trial").

This apparent inconsistency in the case law is not limited to the cases we cite. Almost twenty-five years ago, in a concurrence in *State v. McCallum*, 208 Wis. 2d 463, 561 N.W.2d 707 (1997), then-Chief Justice Abrahamson wrote: "The cases reveal that although the supreme court repeats the erroneous exercise of discretion standard of review, it often appears to have reviewed the trial courts' decisions independently, determining anew whether there exists a reasonable probability of a different result." *See id.* at 485 n.5 (Abrahamson, C.J., concurring).

Here, the parties do not address the apparent inconsistency in the case law, and we have not undertaken an exhaustive review of the relevant cases. Rather, we will apply the de novo standard, which could only benefit Hicks. Applying that standard, we conclude for the reasons stated in the text that Hicks has not shown a reasonable probability that a jury hearing the new evidence would have a reasonable doubt as to his guilt.

Cherokee or otherwise present at the scene. There are several reasons why Hicks's argument does not persuade us.[5]

¶17 First, Taylor's testimony would not change the considerable evidence that implicated Hicks. We need not repeat all of that evidence here, but we note that it included evidence closely connecting Hicks to the green Jeep Cherokee. Witnesses had seen Hicks in a green Jeep Cherokee on previous occasions. At least one of the witnesses saw Hicks driving the Jeep the night before Royster was shot. Shortly after the shooting, the Jeep was driven through toll booths toward Chicago, and several days later, when a Chicago police officer stopped the Jeep, Hicks's brother was driving it, with Hicks as the sole passenger.

¶18 Second, Hicks points to no evidence, old or new, that could explain who else might have been driving the Jeep when Royster was shot. According to Taylor's affidavit, the driver was not Range, Ulmer, or Harrell, who all ran toward the Jeep where the unidentified driver was "already in the driver seat waiting." Hicks apparently means to argue, based on the Taylor affidavit, that the driver was

---

[5] We note that our reasons differ in some respects from those advanced by the State. The State argues that, if Ulmer's threat to Taylor caused Taylor to hide the truth until disclosing it in 2019, it was unlikely that Taylor would have testified at trial in 2015 to the information set forth in his affidavit. The State also argues that, even if Taylor testified consistently with his affidavit, his testimony would lack credibility because a jury would hear that he lied to police. Finally, the State contends that, if Taylor testified consistently with his affidavit, his testimony would directly contradict the defense theory at trial that Hicks was the driver but had no knowledge of any plan to rob the victim.

As set forth in the text, we agree that a jury would reasonably question Taylor's credibility given Taylor's admission that he misinformed the police about what he saw. However, we do not agree with the State's assertion that we should consider what Taylor's testimony would have been if he had testified at the time of trial; the proffered newly discovered evidence consists of what Taylor would say if he testified now. The State fails to cite any authority or develop an argument to support its assertion that Hicks's newly discovered evidence claim must fail because the newly proffered evidence contradicts the defense theory at trial.

an individual who has never been previously referenced or identified. However, the lack of an identifiable alternative suspect would leave a significant hole in Hicks's new defense.

¶19 Third, a jury would have additional reasons to question Taylor's averment that the driver was an unidentified person who was not Hicks. The jury would hear that Taylor lied to the police. Additionally, Taylor's affidavit appears inconsistent with testimony that Taylor's sister provided at trial. Taylor stated that in his "original statements to detectives," he "did not include that I actually knew and seen who committed this offense." However, Taylor's sister testified, in contrast, that Taylor told police shortly after the shooting that Ulmer was one of the individuals who Taylor saw flee in a green Jeep. Further, Taylor's statement that Harrell fled in the same vehicle as Range and Ulmer makes little sense, at least not without further explanation. Hicks does not explain why Harrell—who was Royster's friend and passenger—would have fled the scene in the green Jeep with Range and Ulmer, who had just attacked Royster.

¶20 Fourth, at a new trial the prosecution could argue that even if Taylor were now being truthful, he was mistaken as to what he thought he saw. Not only was Taylor apparently mistaken as to Harrell but also he could have been mistaken as to Hicks. Taylor was not especially close to the driver of the green Jeep—"no more than fifty[]feet" accordingly to his affidavit—and his affidavit does not provide further information establishing whether he was positioned so as to have a clear view of the driver.

¶21 In sum, Hicks has not persuaded us that a jury considering both the old and new evidence would have a reasonable doubt as to his guilt. Accordingly, we reject Hicks's newly discovered evidence claim.

### *Conclusion*

¶22     For the reasons explained above, we conclude that the circuit court properly denied Hicks's postconviction motion under WIS. STAT. § 974.06.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.