IN RE the ESTATE OF Diane JACKSON, Deceased:

James Earl JACKSON, Appellant,

v.

Sidney GRAY, Personal Representative of the Estate of
Diane Jackson and the Children of Diane Jackson,
Respondents.

Court of Appeals

*No. 95–3168. Submitted on briefs June 3, 1997.—Decided July
22, 1997.*

(Also reported in 569 N.W.2d 467.)

On behalf of the appellant, the cause was submitted on the brief of *Jeffrey W. Jensen* of *Law Offices of Jeffrey W. Jensen* of Milwaukee.

On behalf of the respondents, the cause was submitted on the brief of *Daniel J. Cook* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

WEDEMEYER, P.J. James Earl Jackson appeals from a judgment disqualifying him from inheriting a portion of his wife Diane's intestate estate. James Earl claims that the trial court erred as a matter of law when it concluded that the killing of Diane was unlawful and intentional for the purposes of § 852.01(2m)(br), STATS.[1] Because the content of the final written order of the motion court, which declares

---

[1] Section 852.01, STATS., provides:

**Basic rules for intestate succession. . . .**

**(2m)** REQUIREMENT THAT HEIR NOT HAVE INTENTIONALLY KILLED THE DECEASED. (a) If any person who would otherwise be an heir under sub. (1) has unlawfully and intentionally killed the decedent, the net estate not disposed of by will passes as if the killer had predeceased the decedent.

(b) A final judgment of conviction of unlawful and intentional killing is conclusive for purposes of this subsection.

(bg) A final adjudication of delinquency on the basis of unlawfully and intentionally killing the decedent is conclusive for purposes of this subsection.

(br) In the absence of a conviction under par. (b) or an adjudication under par. (bg), the court, on the basis of clear and convincing evidence, may determine whether the killing was unlawful and intentional for purposes of this subsection.

that James Earl unlawfully and intentionally killed his wife, prevails over an earlier finding of the court regarding James Earl's "mental purpose to kill," we affirm.

## I. BACKGROUND

James Earl was convicted of first-degree reckless homicide of his wife, Diane. Her death occurred shortly after a high-speed chase when James Earl, while pursuing Diane's vehicle, struck her vehicle causing it to go out of control. Diane's car then hit a traffic median and rolled over several times before coming to rest. Diane died intestate. James Earl, as her spouse, would normally be entitled to inherit a portion of her estate, with the balance going to her children from a previous marriage. *See* § 852.01(1)(a)2 &(b), STATS.

This is the second appeal in this matter. As noted in this court's first decision, *Jackson v. Jackson*, No. 93–2308, unpublished slip op. at 2 (Wis. Ct. App. July 19, 1994), Diane's children sought an order disqualifying James Earl as an heir. The trial court granted the motion without an evidentiary hearing. We reversed and remanded holding that James Earl's conviction for reckless homicide was not conclusive for the purposes of § 852.01(2m), STATS., and that he was entitled to an evidentiary hearing pursuant to § 852.01(2m)(br). *Id.; see also, Safran v. Safran*, 102 Wis. 2d 79, 98, 306 N.W.2d 27, 36 (1981). On remand after the hearing, the court concluded as a matter of law that "the estate at this Evidentiary Hearing, by clear and convincing evidence has proved that the killing of the decedent was unlawful and intentional for purposes of Sec. 852.01 (2m) (br), Stats." James Earl once again appeals.

## II. ANALYSIS

James Earl asserts that § 852.01(2m), STATS., prohibits a beneficiary from inheriting only when he or she "has unlawfully and intentionally killed" the decedent. He reasons that the plain meaning of the statute requires disqualification only when the beneficiary has caused the death of the decedent with the intent to kill the decedent and where such intentional killing was unlawful.[2] He claims that the trial court found that he never intended to kill his wife and therefore should not be disqualified from inheritance. To support his analysis, he points to the following colloquy that took place between his counsel and the court during the motion hearing on remand:

> [James Earl's Counsel]: . . . The court is not making a finding that Mr. Jackson formed the mental purpose to kill his wife, correct?
>
> The Court: Correct. I am stating that he did an intentional act which caused the death. I presume that would be the appealable issue. That's why I asked if you wanted to make a settlement.

(Capitalization modified.) From this exchange, James Earl argues that the trial court found that he did not intend to kill and, therefore, that under the statute he is not disqualified from inheriting a portion of Diane's estate. James Earl's contention, however, is based on a single question and answer at the hearing. A review of the entire motion hearing record, plus the contents of the final written findings of facts, conclusions of law and order, together with the current statutory scheme affecting "intent to kill" reveals a different view of the

---

[2] The issue of whether Diane's death was unlawful has not been raised and therefore will not be discussed.

court's intention. We shall address the claim of error from three perspectives.

First we examine James Earl's claim from the standpoint of what effect the oral finding had on the final order. Near the end of the hearing, James Earl's counsel asked the court whether it was making a finding that James Earl formed the mental purpose to kill his wife. In doing so, he sought to avoid application of the element of "intent to kill," found in § 940.01, STATS.,[3] and as defined in § 939.23, STATS.[4] This attempt was to prevent James Earl's disqualification as an intestate heir. The court's response to counsel's query consisted of the direct response "[c]orrect," in juxtaposition to the sentence, "I am stating he did an intentional act which caused the death."

When we examine a trial court's decision-making process for review purposes, we are obliged to comply with certain rubrics of accepted appellate procedure. Initially, we observe that the written and signed findings of fact and conclusions of law of a court take precedence over a court's previously issued memorandum decision. *See Gordon v. Gordon,* 270 Wis. 332, 348, 71 N.W.2d 386, 394 (1955). Here the basis for James Earl's claim is an oral finding of the court in response to a late query from counsel. After the court responded to James Earl's counsel, it ordered counsel for Diane's

---

[3] Section 940.01, STATS., provides in pertinent part:

(1) OFFENSE. Except as provided in sub. (2), whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

[4] Section 939.23, STATS., provides in pertinent part:

(4) "With intent to" . . . means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result.

estate to prepare written findings and conclusions of law and submit them to opposing counsel for review. There were no objections to the proposed findings and conclusions, and, thus, they were approved as filed. Pertinent to this appeal, the hearing court found or concluded[5] that: (1) James Earl's auto came into contact with Diane's while she was parked in a filling station; (2) from the station James Earl chased Diane in his car at a high rate of speed; (3) on more than one occasion his car made contact with hers; (4) one of the contacts caused Diane's vehicle to go out of control, which caused her death; (5) Diane died when the car she was driving was struck by James Earl, her husband; (6) the high rate of speed and contact was intentional and, as a matter of law, the estate of Diane had proven that the killing was unlawful and intentional for the purposes of the statute; and (7) James Earl was disqualified for inheritance purposes.

Although *Gordon* established that a court's final written findings of fact and conclusions of law take precedence over an earlier written memorandum, the principle established in *Gordon* has all the more effect when applied to a single oral finding not repeated in the final order. Under this form of analysis, we conclude that the contents of the final order prevail. The final order clearly states that the estate proved by clear and convincing evidence that the killing of Diane was unlawful and intentional for purposes of § 852.01(2m)(br), STATS. Accordingly, James Earl is disqualified as an heir.

---

[5] We are not bound by a trial court's determination as to what is a finding of fact or a conclusion of law. *See Pabst v. DOT*, 19 Wis. 2d 313, 322, 120 N.W.2d 77, 81 (1963).

Next, because the parties did not address the clarity of the trial court's oral remarks which precipitated this appeal, we are not obligated to do so. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145 (1980). Nevertheless, in the interests of completeness, we choose to engage in such analysis. When there is a conflict between an ambiguous oral pronouncement and the written judgment, the intent of the judge controls the determination. *See State v. Lipke*, 186 Wis. 2d 358, 364, 521 N.W.2d. 444, 446 (Ct. App. 1994). "[W]here the oral pronouncement is ambiguous, it is proper to look at the written judgment to ascertain the court's intention." *Id.*

■

Putting aside for a moment the language contained in the final order, we revisit the oral comments of the trial court. The court stated the incident was "intentionally caused," "the intentional high-speed chase . . . was an intentional act so far as the civil court is concerned," and "that . . . by clear and convincing evidence . . . the killing was unlawful and intentional for the purpose of this subsection." Later, however, in response to appellant's attorney's question as to whether the court was finding that James Earl did not "form[ ] the mental purpose to kill his wife," the trial court stated "[c]orrect." The court then expanded its answer to explain, "I am stating that he did an intentional act which caused the death." A reasonable reading leads us to conclude that the oral pronouncement of the court is ambiguous in nature and content. In contrast, the final order of the court expressly declared that the high-speed chase and collision were intentional acts, and that the "estate . . . by clear and convincing evidence has proved that the killing was

unlawful and intentional for purposes of Sec. 852.01(2m) (br), Stats." Although *Lipke* concerned a criminal sentencing discrepancy, whereas this is a civil matter, we conclude that the same principles apply. Here, the written order for judgment is unambiguous. It clearly expresses the court's intent in concluding that the killing was unlawful and intentional. Therefore, in discerning the true intention of the court pursuant to *Lipke*, the final order must prevail. Under this analysis, James Earl is likewise disqualified as an heir.

Last, we examine this claim of error in the context of its statutory setting. James Earl's counsel asked the trial court for a specific finding that he did not "form the mental purpose to kill his wife." In doing so, he was attempting to avoid application of the element of "intent to kill," found in § 940.01, STATS., and as defined in § 939.23, STATS., to prevent James Earl's disqualification as an intestate heir. James Earl's application, however, is too narrowly formulated. In 1987 the legislature amended § 939.23(4), STATS., to read as follows: "'With intent to' or 'with intent that' means that the actor either has a purpose to do the thing or cause the result specified, or *is aware that his or her conduct is practically certain to cause that result.*" (Emphasis added.)

The introductory comments to the new homicide law in the Wisconsin Criminal Jury Instructions are instructive:

> The new phrase—"aware that his conduct is practically certain"—is based on the Model Penal Code, sec. 2.02(2)(b)ii, where almost identical language is used to define "knowingly." Acting either with "mental purpose" or "knowingly" is sufficient for liability for most offenses defined by the Model Code.

444

The basis for this approach is the conclusion that acting with awareness that one's conduct is "practically certain" to cause a result is as blameworthy as acting with the purpose to cause that harm.

WIS J I—CRIMINAL 1000 (II)(C).

Thus, we must recognize that "with intent to" has a broader connotation than that argued by James Earl. To illustrate the implications of the new definition of "intent to kill," the Criminal Jury Instruction committee has provided the example of the arsonist who is being paid to burn down a building. *Id.* He knows there are people in the building, but he starts the fire anyway. *Id.* He does not have the purpose to cause their death, and he hopes they are able to escape. *Id.* If "intent to kill" was limited to "purpose to cause the death of another," there would be no "intent to kill." Yet, he is "aware that his conduct is practically certain" to cause death and, therefore, his act is with the intent to kill under the current Model Penal Code formulation.

Another example is the person who, from medium to short range, fires numerous times at a person and then exclaims, "yes, I fired the gun at him, but I didn't intend to kill him." The principle behind the expanded definition of "with intent to" allows the finder of fact to determine whether, under the circumstances, the accused is aware that his or her conduct is practically certain to cause death.

In conducting the remand hearing, the trial court succinctly and correctly stated its task, i.e., to determine whether the killing was intentional for the purposes of § 852.01(2m)(br), STATS. It then reviewed the record relating to the incident. The record contains police reports of batteries to Diane, and a threat to take her in a car and kill her. Prior to the last high-speed

chase, James Earl observed Diane's car in a filling station and bumped into it. In the high-speed chase that ensued, James Earl intentionally caused his car to physically crash into Diane's car more than once—the last contact between the two vehicles caused Diane's car to go off the road, over a traffic median, and to roll over several times. Based on this record and the court's findings, the trial court concluded not only that the high-speed chase and collision was intentional, but also that the killing of Diane was intentional and unlawful thereby satisfying the disqualification criteria.

Although the trial court did not make a specific finding that James Earl was aware that his conduct was practically certain to cause Diane's death, the evidence would support such a finding. "This court may affirm the judgment if '[a] perusal of the evidence shows that the court reached a result which the evidence would sustain if specifically found.'" *Grimh v. Western Fire Ins. Co.*, 5 Wis. 2d 84, 89, 92 N.W.2d 259, 262 (1958) (citations omitted); *see also Sohns v. Jensen*, 11 Wis. 2d 449, 453, 105 N.W.2d. 818, 820 (1960) (This court may assume when "a finding [of fact] is not made on an issue which appears from the record to exist, that it was determined in favor of or in support of the judgment."). Moreover, when faced with ambiguous findings, "[t]hat one of two or more reasonable probable meanings of the language used should be adopted which will make the same material and will support the judgment rather than one which will defeat it, and in solving the matter resort should be had to the evidence dealt with by the finding." *Bautz v. Adams*, 131 Wis. 152, 159, 111 N.W. 69, 72 (1907).

Therefore, even though the specific query that James Earl relies on in support of his argument may

446

raise some ambiguity with regard to the trial court's findings pertaining to "intent," we conclude that the trial court resolved that ambiguity when it rendered the final judgment. The evidence is sufficient to support a finding that the trial court found the "intent" element of the probate statute was satisfied because James Earl was aware that his conduct was practically certain to cause the death. He repeatedly and intentionally crashed into Diane's car during a high-speed chase. In the past, he expressed intent to harm her, even kill her. When an automobile traveling at a high rate of speed is operated with animus to intentionally collide with another vehicle, it is practically certain that the driver may lose control and crash, and that the occupants will be killed. This inference is abundantly supported in the record.

Therefore, under this analysis, we conclude that the killing of Diane "was unlawful and intentional for purposes" of § 852.01(2m)(br), STATS., and James Earl was properly disqualified as an heir.

*By the Court.*—Judgment affirmed.