STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Jason L. McCLAREN, Defendant-Appellant.

Supreme Court

*No. 2007AP2382–CR. Oral argument April 15, 2009.
—Decided July 9, 2009.*

2009 WI 69

(Also reported in 767 N.W.2d 550.)

740

For the plaintiff-respondent-petitioner the cause was argued by *James M. Freimuth*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant there was a brief by *Michael C. Witt* and *Criminal Defense & Civil Litigation, LLC*, Jefferson, and oral argument by *Michael C. Witt*.

¶ 1. N. PATRICK CROOKS, J. This case concerns an interlocutory appeal before the court of appeals of a circuit court's pretrial order. The order permitted the

defendant-appellant, Jason L. McClaren (McClaren), to introduce in connection with his claim of self-defense what is commonly referred to as "*McMorris*[1] evidence" —evidence of violent acts the victim had committed which McClaren knew about at the time of the alleged crime, and which would bear on the reasonableness of the claim of self-defense—but only on the condition that he provide a summary of that evidence prior to trial so that the court could make a pretrial determination of its relevance and admissibility. McClaren objected to that requirement on the grounds that the court had no authority to require disclosure of such evidence and that doing so violated certain constitutional rights. He contended that the proper time to resolve concerns about admissibility would be after the testimony was elicited at trial and drew an objection. He sought and was granted review of the non-final order at the court of appeals.

¶ 2.　The court of appeals, in a published decision, held that the circuit court's order exceeded its authority because neither Wis. Stat. § 971.23 (2005–06),[2] which sets forth limited pre-trial disclosure obligations for a defendant, nor Wis. Stat. § 906.11, which authorizes a court to exercise control over the presentation of evidence, extended to an order to provide *McMorris* evidence in advance of trial. *State v. McClaren*, 2008 WI App 118, 313 Wis. 2d 398, 756 N.W.2d 802. Because the court of appeals resolved the issue in favor of McClaren on statutory grounds, it did not reach McClaren's constitutional arguments.

---

[1] *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973).

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

¶ 3. For the reasons stated below, we reverse the decision of the court of appeals. Wisconsin statutes provide the circuit court with the necessary authority for the order we consider here. Wis. Stat. § 906.11 authorizes a judge to exercise control over the presentation of evidence so that the truth can be effectively ascertained and so that time will not be needlessly wasted. To hold otherwise could frustrate a circuit court's efforts to try to be certain that a jury is presented with admissible, reliable evidence and to make pretrial rulings so that the trial runs smoothly. The authority of a circuit court under Wis. Stat. § 906.11 fits within the broader context of a court's inherent powers "which must necessarily be used to enable the judiciary to accomplish its constitutionally or legislatively mandated functions." *City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 747, 595 N.W.2d 635 (1999) (citing *State ex rel. Friedrich v. Dane County Cir. Ct.*, 192 Wis. 2d 16, 531 N.W.2d 32 (1995)). Foreseeing potential obstacles to a smoothly run trial and taking the necessary steps to avoid them is manifestly within the inherent power of a circuit court.

¶ 4. McClaren says that, in requiring him to tell prior to trial which instances of the victim's violent conduct he was aware of at the time of the incident, the order violates his Fifth Amendment rights to remain silent and not incriminate himself. He says the order also runs afoul of the Due Process Clause because it imposes no reciprocal obligations on the State. Finally, he argues that excluding evidence—the sanction the court stated would result for his not complying with the order—would violate his Sixth Amendment right to present a defense.

744

¶ 5. There is no constitutional bar to the exercise of the circuit court's authority in this case. Ascertainment of the truth is the primary objective of a trial, and such an order serves that objective in a constitutionally permissible manner. Efficiency is a secondary objective of a trial, but where it can be attained with constitutionally permitted measures, it is highly desirable. The United States Supreme Court has, on more than one occasion, upheld measures that ensure fair play and efficient use of trial court time. Where, as here, the evidence to be disclosed is nothing more than what the defendant chooses and has indicated he will put on at trial, such an order does not invade constitutional protections under the Fifth Amendment. As the United States Supreme Court noted in an analogous case, the Constitution does not guarantee a criminal defendant the right to surprise the prosecutor. *Williams v. Florida*, 399 U.S. 78, 86 (1970) ("We decline to hold that the privilege against compulsory self-incrimination guarantees the defendant the right to surprise the State with an alibi defense."). Nor does the order violate McClaren's constitutional rights to due process; United States Supreme Court case law holds that so long as disclosure requirements are equally imposed on both parties, there is no constitutional violation. *Wardius v. Oregon*, 412 U.S. 470 (1973).

¶ 6. A corollary to the question of the constitutionality of the order is the constitutionality of any sanctions available for a violation of the order. McClaren contends that exclusion of evidence is simply not an option. However, in *Taylor v. Illinois*, 484 U.S. 400 (1988), the United States Supreme Court set forth the appropriate analysis for such a violation and established that sanctions up to and including exclusion of

evidence are permissible if warranted. It appears from the record that the circuit court intended to exclude from trial any evidence that McClaren attempted to offer at trial in violation of the order; we clarify here that while such a sanction may be permitted, lesser sanctions must be considered first, and that the extreme sanction of exclusion is permissible only after the circuit court has determined that the violation was "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence," the test set forth in *Taylor*. *Id.* at 415.

¶ 7. We therefore reverse the decision of the court of appeals and remand to the circuit court for further proceedings.

## I. BACKGROUND

¶ McClaren spent a spring evening drinking with his wife's ex-boyfriend, Conrad Goehl (Goehl), and the night ended with an altercation—arising, ironically, from a discussion of anger management counseling—in which McClaren hit Goehl with a pickaxe. When the police arrived at the scene, Goehl said he had been attacked without provocation; McClaren claimed self-defense. McClaren was charged with several crimes, including attempted first-degree intentional homicide. Prior to trial, which was scheduled to begin October 29, 2007, McClaren filed a motion in limine seeking a ruling on the admissibility of information about Goehl's extensive criminal record and time in prison, and evidence of his "dangerous character and prior acts of violence." A hearing was held on McClaren's motion on October 2, 2007, four weeks before the day of trial.

¶ 9. Following the hearing, the Jefferson County Circuit Court, the Honorable Randy R. Koschnick pre-

siding, ruled that McClaren would be allowed to introduce evidence about Goehl's violent past but gave McClaren a pretrial deadline to disclose to the State and to the court the nature of the evidence he intended to introduce. The court required "a summary of all specific instances of the victim's violent conduct of which the defendant was aware and that the defendant intends to introduce at trial, including witnesses to such conduct and the date and place such conduct occurred." The record showed that Goehl had 11 prior convictions,[3] and the circuit court expressed concern about the length of a mid-trial hearing, outside the jury's presence, on the admissibility of evidence of this nature.

¶ 10. In its oral ruling, the circuit court imposed a reciprocal requirement that the State in turn provide a summary of any evidence it intended to use to rebut McClaren's *McMorris* evidence regarding Goehl.

¶ 11. Since the order was not appealable as of right, McClaren filed a petition for leave to appeal the order, pursuant to Wis. Stat. § 809.50, and the court of appeals granted the petition.

¶ 12. The court of appeals reversed. The court of appeals viewed the order, "in essence, as a discovery device," and thus centered its analysis on Wis. Stat. § 971.23, which addresses what evidence a prosecutor must disclose and what evidence a defendant must disclose. *McClaren*, 313 Wis. 2d 398, ¶ 25. Because that statute has nothing to say about *McMorris* evidence, the court held that the order exceeded the circuit court's authority; it found Wis. Stat. § 906.11 inapplicable and, because it found no statute or case that

---

[3] Of course, we note that the potential evidence of prior violent conduct could include conduct other than that which led to the convictions.

required such disclosure, held that the order was not permitted. *Id.* It cited this court's holding in *State v. Miller*, 35 Wis. 2d 454, 151 N.W.2d 157 (1967), that discovery in criminal cases was not a matter to be determined by case law but depended on statute or the rule-making process. *Id.*, ¶ 14.

¶ 13.  The State filed a petition with this court seeking review of the court of appeals' decision, and we granted review.

## II. STANDARD OF REVIEW

■

¶ 14.  This case involves questions of judicial authority, statutory interpretation, and constitutional issues, all of which are reviewed de novo. *Custodian of Records for the LTSB v. State*, 2004 WI 65, ¶ 6, 272 Wis. 2d 208, 680 N.W.2d 792; *State v. Floyd*, 2000 WI 14, ¶ 11, 232 Wis. 2d 767, 606 N.W.2d 155; *In the interest of E.C.*, 130 Wis. 2d 376, 381, 387 N.W.2d 72 (1986).

## III. DISCUSSION

¶ 15.  We begin by focusing on two things: the circumstances under which the order was made, and what evidence the order concerned.

¶ 16.  This case was proceeding toward trial. The order McClaren challenges here arose at a hearing on a motion in limine brought by McClaren. He was seeking, among other things, for the circuit court to rule that testimony concerning Goehl's violent history would be admissible on the grounds that it was relevant to McClaren's state of mind.[4] The discussion turned to

---

[4] McClaren's motion in limine requested:

what specific evidence McClaren wanted to admit. The court engaged counsel in extended discussion of the dilemma presented: how the court could control the evidence to ensure that the jury heard only that which was relevant, not cumulative and not unfairly prejudicial. Among Goehl's prior convictions, for example, was a conviction for sexual assault of a child, and the potential for that evidence to be submitted at trial raised multiple questions—its relevance to McClaren's state of mind (whether McClaren even knew about it), its relevance as to Goehl's violent character, and its highly prejudicial nature. Besides questions of admissibility there was also the question of how the State would be able to investigate and rebut evidence that was revealed for the first time at trial. The circuit court concluded that the impracticality of deciding these issues at trial precluded that option. The part of the written order relevant to this review was as follows:

> The defendant shall make written disclosure to the Court and the prosecution by the close of business on October 16, 2007, a summary of all specific instances of the victim's violent conduct of which the defendant was aware and that the defendant intends to introduce at trial, including witnesses to such conduct and the date

> . . . .

> 3. That the court make a ruling out of the presence of the jury regarding the admissibility of Conrad Goehl's criminal convictions, as well as specific finding as to the number of Mr. Goehl's criminal convictions.

> 4. That the Court make a ruling out of the presence of the jury regarding the admissibility of the type and factual basis for Mr. Goehl's convictions, as well as Mr. Goehl's dangerous character and prior acts of violence, as they directly relate to the reasonableness of the perceived threat Mr. Goehl posed to the defendant and the defendant's belief that force was necessary to terminate the interference with his person by Mr. Goehl.

and place such conduct occurred. Such disclosure does not include acts of the victim referenced in the defendant's interrogation on March 31, 2007.

¶ 17.  In the oral ruling made at the hearing, the circuit court further stated:

> The ruling is, if any party intends to introduce evidence concerning an act by Mr. Goehl which is not covered in the interview, police interview with the defendant, the offering party needs to provide written notice to the Court and the opposing party by close of business on October 12th as to the particular acts; and that includes the location, the time, the witnesses and the behavior, the witnesses that the party intends to call at trial concerning that particular act. That applies to both parties. I can't conceive of a situation right now where the State would have evidence that falls into this category, but they might[,] and the same ruling applies to both parties.

¶ 18.  The court referred repeatedly to the fact that the ruling was based on its concern for using jurors' time effectively and avoiding unfair prejudice to either party.[5]

¶ 19.  As noted above, McClaren appealed the order on several grounds: first, that the circuit court was

---

[5] For example, the court stated, "I'm not concerned about sanctions on [McClaren] so much as I am concerned about not, you know, misleading the jury, allowing evidence to come in that's not properly admissible; it's likely to be unfairly prejudicial." Later in the hearing, the court said, "I don't want to take time with the jury sitting here to be processing this information during the trial, and it could be a pretty lengthy hearing that's required depending on what it is we're talking about. . . . I don't want to end up in a situation where the jury is waiting in the jury room for two hours while I hear from three or four witnesses describing something allegedly done by Mr. Goehl . . . ."

without authority for such an order; second, that it violated his Fifth Amendment right against self-incrimination and right to remain silent because it compelled him to provide to the circuit court and the State an account of what he knew at the time of the incident about Goehl's prior violent acts; third, that in conditioning the admissibility of testimony of defense witnesses on prior disclosure, the order violated his due process rights because it imposed no reciprocal obligation on the State; and fourth, for the same reason, the order violated his Sixth Amendment right to present a defense.[6]

¶ 20. We examine each of his arguments in turn but first briefly summarize the law on evidence supporting a claim of self-defense.

■■

¶ 21. It is well established that a defendant seeking to support a self-defense claim may attempt to "prov[e] prior specific instances of violence within [the defendant's] knowledge at the time of the incident." *State v. Wenger*, 225 Wis. 2d 495, 507, 593 N.W.2d 467 (Ct. App. 1999) (quoting *McMorris v. State*, 58 Wis. 2d 144, 152, 205 N.W.2d 559 (1973)); *see also* Wis. Stat. §§ 904.04 and 904.05(2). It is also well established that admissibility of evidence proffered to show the reasonableness of the self-defense claim is within the circuit court's discretion. *State v. Head*, 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413. As with any "other acts evidence," the evidence is subject to the application of the balancing test involving the weighing of probative

---

[6] The Sixth Amendment provides as follows: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

value against the danger of unfair prejudice, and considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* Wis. Stat. § 904.03. Assuming its probative value outweighs such considerations, we have in previous cases established the defendant's right to put on such evidence once a factual basis has been set forth for a self-defense claim, and also established the circuit court's responsibility to vet the evidence prior to admission to be sure it is valid *McMorris* evidence. *See, e.g., McAllister v. State*, 74 Wis. 2d 246, 246 N.W.2d 511 (1976). The question before us in this case is primarily a question of timing: whether a circuit court has the authority to order a defendant to disclose any planned *McMorris* evidence prior to trial, so that the factors involved in determining the evidence's admissibility can be weighed not only prior to admission, but also prior to trial.

A. Authority for the order

¶ 22. McClaren argues that this court in *Miller* limited a court's authority to order disclosure of evidence in a criminal case to what is permitted by statute. In *Miller* this court noted, "If we are to adopt a pretrial discovery procedure in criminal cases in this state we deem it would be best done by a rule of court or by legislative action rather than on a case to case basis by the court." *Miller*, 35 Wis. at 478. Finding no authority for the disclosure of *McMorris* evidence in Wis. Stat. § 971.23, which lists what parties in a criminal case are required to disclose, he argues that the inquiry is ended.

¶ 23. The State gleans statutory authority for a circuit court to order disclosure of pretrial *McMorris* evidence from reading together Wis. Stat. §§ 906.11 and 901.04(3)(d). Those statutes authorize a court to exer-

cise reasonable control over the presentation of evidence and provide for hearings to be held outside the presence of the jury for "[a]ny preliminary matter if the interests of justice so requires." § 901.04(3)(d).

¶ 24. We do not view this case as presenting the kind of discovery question *Miller* was addressing.[7] One significant difference is that the evidence covered by the order is nothing more than evidence that the party chooses to submit. The order is, in essence, compelling advance notice of whatever *McMorris* evidence McClaren decides to offer solely for the legitimate purpose of establishing its admissibility in advance of trial.

¶ 25. Here, the evidence in question presents the potential for multiple delays in the trial, if it is not resolved in advance of trial. The rule McClaren advocates, which would render disclosure of any *McMorris* evidence impermissible until such time as the defendant chose to disclose it, could force not just one, but many mid-trial delays. Under his approach, the court may not force him to disclose, even after the trial is underway, all of the specific acts at once; his argument is that *any* forced disclosure before the point at which he seeks to admit the evidence runs afoul of the Constitution.[8] Multiple continuances while the State investigates each incident and multiple hearings outside of the presence of the jury are a distinct possibility

---

[7] We do note, however, that *State v. Miller*, 35 Wis. 2d 454, 151 N.W.2d 157 (1967), which was decided in 1967, predated both Wis. Stat. § 906.11, which gives a court broad powers to control the presentation of evidence, and Wis. Stat. § 971.23, which imposes disclosure requirements on both the State and criminal defendants. Those statutes were adopted in 1973.

[8] At the motion hearing, McClaren's counsel said any evidence he would attempt to admit is "subject to objection" and would be dealt with at that moment in the trial.

on the facts of this case: 11 prior convictions of the victim, Goehl, are known; the number of incidents of prior violent conduct that did not result in conviction is unknown. Such an approach puts the control of the trial in the hands of the defendant rather than the court and introduces unnecessary uncertainty into an otherwise predictable trial process. With no basis for an estimate of how long the trial will run, a judge would be unable to balance other calendar demands and unable to tell potential jurors during jury selection how long the trial is expected to last.

¶ 26. Given the limited nature of the evidence covered in this order—that is, the requirement that McClaren give notice of the specific *McMorris* evidence he wants to introduce and which he was aware of on the night of the incident—this order fits comfortably into Wis. Stat. § 906.11's description of the court's sphere of control. The court is, in fact, required to "exercise reasonable control" over the "present[ation of] evidence" so that it can be done effectively and with minimal wasted time. *See State v. Wallerman*, 203 Wis. 2d 158, 168, 552 N.W.2d 128 (Ct. App. 1996). Both concerns were specifically mentioned by the circuit court with regard to this order. This is precisely the type of admissibility of evidence questions that circuit courts should be attempting to resolve in advance of trial.[9]

¶ 27. The United States Supreme Court has upheld a law requiring pre-trial notice of an alibi defense along with the specific location where the defendant claims to have been and names and addresses of alibi

---

[9] For example, evidence the prosecution wishes to introduce against the defendant under Wis. Stat. § 904.04(1)(b) and (2) is handled in a similar fashion. *See State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

witnesses.[10] Like such a law, this order merely moves the notification of the intent to introduce evidence from the heat of the trial to the relative calm of a pre-trial motion hearing. It enables more effective presentation of evidence, avoids needless waste of time while a jury is waiting, and gives a circuit judge the time to consider all the arguments and research the case law prior to making a ruling.[11]

█

¶ 28.  Under the circumstances presented here, where McClaren seeks to introduce *McMorris* evidence in support of a self-defense claim, the circuit court has the authority under Wis. Stat. § 906.11, in conjunction with Wis. Stat. § 901.04(3)(d), to order the defendant to disclose prior to trial any specific acts that he knew about at the time of the incident and that he intends to offer as evidence so that admissibility determinations can be made prior to trial.

[10] *Williams v. Florida*, 399 U.S. 78 (1970).

[11] In *State v. Wright*, the court of appeals noted the common use of pretrial rulings in Wisconsin and other jurisdictions and noted that they are favored in a variety of circumstances:

> While the following list is not exhaustive, we view a motion in limine as proper where (1) the trial court has directed that the evidentiary issue be resolved before trial; (2) the evidentiary material is highly prejudicial or inflammatory and would risk a mistrial if not previously addressed by the trial court; (3) the evidentiary issue is significant and unresolved under existing law; (4) the evidentiary issue involves a significant number of witnesses or a substantial volume of material making it more economical to have the issue resolved in advance of trial so as to save the time and resources of all concerned; or (5) a party does not wish to object to the evidence in the presence of the jury and thereby preserves the issue for appellate review by obtaining an unfavorable ruling via a pretrial motion in limine[.]

*State v. Wright*, 2003 WI App 252, ¶ 40, 268 Wis. 2d 694, 673 N.W.2d 386 (citations omitted).

¶ 29.   The United States Supreme Court's discussion of limitations on the defendant in presenting his or her evidence when the defendant pleases closely tracks the logic of Wis. Stat. § 906.11. The linchpins of a fair trial are the "orderly presentation of facts" and "a fair opportunity" for each party to prepare evidence and rebuttal evidence. *Taylor*, 484 U.S. at 411.

¶ 30.   In *Taylor*, a case concerning a violation of a rule requiring advance notice of witnesses, the United States Supreme Court said:

> The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The *adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts* and arguments to provide each party with *a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.* The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony.

*Id.* at 410–11. (emphasis added).

¶ 31.   The Supreme Court noted as well: "In the exercise of [the right to present witnesses], the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Taylor*, 484 U.S. at 411 n.15 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

¶ 32.   The order in this case did nothing more than what was found permissible in the *Taylor* case: it was a procedure related to a rule of evidence designed to assure fairness.

756

## B. Constitutionality of the order

¶ 33. McClaren further argues that the order violates his rights against compelled self-incrimination under the Fifth Amendment of the United States Constitution. In essence, he argues, he is being compelled to provide the State, prior to trial, with what he knew about Goehl's violent character and when he knew it, even though he could ultimately choose at the close of the State's case not to testify.

¶ 34. The State argues that no constitutionally protected right is violated because the order concerns only what McClaren chooses to disclose[12] and merely accelerates the disclosure of information that would be presented at trial.

██

¶ 35. In ruling that a defendant could be required to give notice of an alibi defense prior to trial, a defense analogous to self-defense, the United States Supreme Court said:

> Petitioner concedes that absent the notice-of-alibi rule the Constitution would raise no bar to the court's granting the State a continuance at trial on the ground of surprise as soon as the alibi witness is called. Nor would there be self-incrimination problems if, during

---

[12] Any concerns that a defendant has concerning the disclosure potentially being used by the prosecutor in the case-in-chief could be addressed by an in camera review by the circuit court. Such a mechanism has been endorsed by the United States Supreme Court as a fair way of resolving disclosure disputes. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987)(finding that both the defendant's and the State's interest "in ensuring a fair trial can be protected fully by requiring that the [evidence being sought] be submitted only to the trial court for in camera review" prior to a ruling on disclosure).

757

■

that continuance, the State was permitted to do precisely what it did here prior to trial: take the deposition of the witness and find rebuttal evidence. *But if so utilizing a continuance is permissible under the Fifth and Fourteenth Amendments, then surely the same result may be accomplished through pretrial discovery, as it was here, avoiding the necessity of a disrupted trial.* We decline to hold that the privilege against compulsory self-incrimination guarantees the defendant the right to surprise the State with an alibi defense.

*Williams*, 399 U.S at 85 (emphasis added). The same rationale supports our conclusion here.

¶ 36. McClaren also argues that the order is constitutionally deficient because its lack of reciprocity violates the requirement of the Fourteenth Amendment's Due Process Clause. The United States Supreme Court struck down a criminal statute in *Wardius* that required a defendant to disclose an alibi defense without requiring reciprocal disclosure by the state of its rebuttal evidence. *Wardius*, 412 U.S. 470. McClaren argues that the order presented here is equally deficient; the only way it could be made reciprocal is for the prosecutor to be ordered to disclose "all corroborating evidence of the alleged victim's concededly violent past implicated by the defendant's forced pre-trial disclosures, including the names of any additional witnesses to prior violent acts engaged in by the alleged victim."

■

¶ 37. A careful comparison of *Wardius* and the oral ruling of the circuit court in this case shows that the flaw present in *Wardius* was not present here. The statute at issue in *Wardius* contained no guarantee of disclosure of rebuttal evidence to the defendant. The

758

Court stated that "[a]lthough the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, it does speak to the balance of forces between the accused and accuser." *Wardius*, 412 U.S. at 474 (citation omitted). The Court went on to say:

> The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining "poker game" secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.

*Id.* at 475–76.

¶ 38.  Here the circuit court's oral ruling made more clear than the written order that reciprocity was absolutely required. The circuit court said:

> So what I have in mind is that the deadline for filing the written materials would be the 12th . . . . That would apply to the State and to the defense. If the State has evidence that would fall into the category of acts not covered in the police interview which are relevant to self-defense *or the lack thereof*, those acts would be covered as well for the same reasons. (Emphasis added.)

¶ 39.  It might have been more clear had the court explicitly called the evidence showing a lack of self-defense rebuttal evidence, but in any case, the court was explicit that its order applied to both parties.

## C. Constitutionality of the potential sanction

¶ 40.  A conclusion that the circuit court has authority to issue such an order necessarily brings us to the question of the authority to enforce such an order.

¶ 41. McClaren says that excluding evidence as a sanction for violating the court's order is impermissible because it would violate his constitutional right to present witnesses, and thus to present a defense, under the Sixth Amendment's compulsory process clause.[13]

¶ 42. The State contends that such a sanction may be permitted depending on the facts and that *Taylor* controls the sanction for any violations. *Taylor* upheld an Illinois court's refusal to allow testimony from a defense witness whose name was not disclosed prior to trial. The Court rejected the defendant's assertion that excluding evidence was never a permissible sanction and established a framework for analyzing violations. *Taylor*, 484 U.S. at 412–13. ·

██ ██

¶ 43. We agree with the State. The United States Supreme Court has established a test for excluding evidence and has said that under certain circumstances, exclusion of evidence does not violate a defendant's constitutional rights. There are sanctions short of excluding evidence, of course. The Court cited a case, for example, that "[gave] consideration to the effectiveness of less severe sanctions, the impact of preclusion on the evidence at trial and the outcome of the case, the extent of prosecutorial surprise or prejudice, and whether the violation was willful." *Taylor*, 484 U.S. at 415 n.19 (citing *Fendler v. Goldsmith*, 728 F.2d 1181 (9th Cir. 1983)). However, as *Taylor* makes clear, even the sanction of excluding evidence against a defendant is con-

---

[13] The Sixth Amendment provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI. In *Washington v. Texas*, 388 U.S. 14 (1967), the United States Supreme Court held that this right applies in state prosecutions.

stitutionally permissible in certain cases, such as where there have been willful violations "motivated by a desire to obtain a tactical advantage." *Taylor,* 484 U.S. at 415.

¶ 44. As we noted above, *Taylor* states well the balancing of interests that goes into a court's oversight of a trial:

> It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. *But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests.* The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id.* at 414–15 (emphasis added).

¶ 45. Whether a violation merits the extreme sanction of exclusion must be determined by a circuit court after a violation has occurred, and under the parameters set forth by the United States Supreme Court in *Taylor*.

¶ 46. Here the circuit court noted in its oral ruling that, "As always, if new evidence is discovered at the last minute that may be the basis for an exception to the notice requirement." The circuit court should have been more clear that the *Taylor* analysis would be applied and that exclusion was one of the sanctions available to the circuit court for a violation of its order; it was premature for the circuit court, in its oral ruling, to predict that the sanction for failure to abide by the order would necessarily be the exclusion of evidence.

761

## IV. CONCLUSION

¶ 47.   For the reasons stated, we reverse the decision of the court of appeals. Wisconsin statutes provide the circuit court with the necessary authority for the order we consider here. Wis. Stat. § 906.11 authorizes a judge to exercise control over the presentation of evidence so that the truth can be effectively ascertained and so that time will not be needlessly wasted. To hold otherwise could frustrate a circuit court's efforts to try to be certain that a jury is presented with admissible, reliable evidence and to make pretrial rulings so that the trial runs smoothly. The authority of a circuit court under Wis. Stat. § 906.11 fits within the broader context of a court's inherent powers "which must necessarily be used to enable the judiciary to accomplish its constitutionally or legislatively mandated functions." *Davis*, 226 Wis. 2d at 747. Foreseeing potential obstacles to a smoothly run trial and taking the necessary steps to avoid them is manifestly within the inherent power of a circuit court.

¶ 48.   McClaren says that, in requiring him to tell prior to trial which instances of Goehl's violent conduct he was aware of at the time of the incident, the order violates his Fifth Amendment rights to remain silent and not incriminate himself. He says the order also runs afoul of the Due Process Clause because it imposes no reciprocal obligations on the State. Finally, he argues that excluding evidence—the sanction the court stated would result for his not complying with the order—would violate his Sixth Amendment right to present a defense.

¶ 49.   There is no constitutional bar to the exercise of the circuit court's authority in this case. Ascertainment of the truth is the primary objective of a trial,

and such an order serves that objective in a constitutionally permissible manner. Efficiency is a secondary objective of a trial, but where it can be attained with constitutionally permitted measures, it is highly desirable. The United States Supreme Court has, on more than one occasion, upheld measures that ensure fair play and efficient use of trial court time. Where, as here, the evidence to be disclosed is nothing more than what the defendant chooses and has indicated he will put on at trial, such an order does not invade constitutional protections under the Fifth Amendment. As the United States Supreme Court noted in an analogous case, the Constitution does not guarantee a criminal defendant the right to surprise the prosecutor. Nor does the order violate McClaren's constitutional rights to due process; United States Supreme Court case law holds that so long as disclosure requirements are equally imposed on both parties, there is no constitutional violation.

¶ 50. A corollary to the question of the constitutionality of the order is the constitutionality of any sanctions available for a violation of the order. McClaren contends that exclusion of evidence is simply not an option. However, in *Taylor*, the United States Supreme Court sets forth the appropriate analysis for such a violation and establishes that sanctions up to and including exclusion of evidence are permissible if warranted. It appears from the record that the circuit court intended to exclude from trial any evidence that McClaren attempted to offer at trial in violation of the order; we clarify here that while such a sanction may be permitted, lesser sanctions must be considered first, and that the extreme sanction of exclusion is permissible only after the circuit court has determined that the violation was "willful and motivated by a desire to obtain a tactical advantage that would minimize the

effectiveness of cross-examination and the ability to adduce rebuttal evidence," the test set forth in *Taylor*.

¶ 51. We therefore reverse the decision of the court of appeals and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

¶ 52. SHIRLEY S. ABRAHAMSON, C.J., did not participate.

¶ 53. ANN WALSH BRADLEY, J. (*dissenting*). There is a name for mandatory pretrial disclosure of information that might be offered as evidence in a criminal proceeding: discovery. Although the majority attempts to label what is at issue in this case as merely the pretrial disclosure of information, I agree with a unanimous court of appeals that the order here "in essence, [is] a discovery device." *State v. McClaren*, 2008 WI App 118, ¶ 25, 313 Wis. 2d 398, 756 N.W.2d 802.

¶ 54. Our precedent is clear that discovery is governed by the criminal discovery statute, Wis. Stat. § 971.23. *Lynch v. County Court*, 82 Wis. 2d 454, 466, 262 N.W.2d 773 (1978) (citing *State v. Miller*, 35 Wis. 2d 454, 478, 151 N.W.2d 157 (1967)). If a certain type of evidence is not enumerated in the statute, then mandatory disclosure is not authorized.

¶ 55. The majority departs from this precedent. Realizing that the discovery statute does not require pretrial disclosure of *McMorris*[1] evidence, the majority ultimately turns to the inherent powers of the court. *See* majority op., ¶ 3.

¶ 56. By relying on inherent authority, the majority opens wide the gates of pretrial discovery in criminal

[1] *McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973).

764

cases. Its rationale and holding stretch far beyond the disclosure of *McMorris* evidence. Instead, the majority rests on an unlimited pronouncement that covers the pretrial disclosure of *any* information that might aid in ensuring a smoothly run trial: "Foreseeing potential obstacles to a smoothly run trial and taking the necessary steps to avoid them is manifestly within the inherent power of a circuit court." Majority op., ¶ 3.

¶ 57.  I agree instead with the court of appeals that "the court's general authority under Wis. Stat. § 906.11 to exercise control over the mode and order of presenting evidence cannot be read to permit it to require pretrial discovery that it would otherwise not be permitted to require under [the criminal discovery statute]." *McClaren*, 313 Wis. 2d 398, ¶ 1. Although I share the majority's concern for the efficient and fair administration of a trial, I believe that any revision in the law should be brought about by legislative change and not by a resort to inherent authority of the court.[2] Accordingly, I respectfully dissent.

I

¶ 58.  In this case, the circuit court ordered the defendant to provide "a summary of all specific instances of the victim's violent conduct of which the defendant was aware and that the defendant intends to introduce at trial, including witnesses to such conduct and the date and place such conduct occurred."[3] The

---

[2] Because I conclude that the circuit court did not have the authority to enter the order, I need not address McClaren's constitutional arguments.

[3] *See* majority op., ¶ 16. Throughout the opinion, the majority focuses on the court's oral ruling rather than focusing on the unilateral nature of the written order. *See* majority op.,

court of appeals determined that the order for disclosure was governed by the discovery statute. Finding no authority in the statute for the order, it reversed the circuit court.

¶ 59. The majority, however, asserts that this is not a discovery case. Majority op., ¶ 24. Although it attempts to tie its analysis to evidentiary statutes, its conclusion is based on inherent authority: "Foreseeing potential obstacles to a smoothly run trial, and taking the necessary steps to avoid them, is manifestly within the inherent power of a circuit court." *Id.*, ¶ 3.

¶ 60. Our cases have established that compelled pretrial disclosure of evidence by any other name is still governed by the discovery rules. *State v. Schaefer*, 2008 WI 25, 308 Wis. 2d 279, 746 N.W.2d 457. In *Schaefer*,

¶¶ 10, 17, 37, 38. This focus is misguided. Appeal is taken from a written order or judgment. *State ex rel. Hildebrand v. Kegu*, 59 Wis. 2d 215, 216, 207 N.W.2d 658 (1973); *Estate of Jackson v. Gray*, 212 Wis. 2d 436, 442, 569 N.W.2d 467 (Ct. App. 1997).

As a result, the majority does not squarely address McClaren's constitutional arguments. The majority correctly sets forth the due process principle that disclosure requirements must be reciprocal: "It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." Majority op., ¶ 37 (quoting *Wardius v. Oregon*, 412 U.S. 470, 476 (1973).

Nevertheless, the circuit court's written ruling required only the defendant to disclose information. *See* majority op., ¶ 16 ("The defendant shall make written disclosure to the Court and the prosecution . . . .") The court's written order imposed no reciprocal disclosure requirement upon the State. *See id.* In fact, it posed no requirement on the State at all.

Given that the circuit court's order lacked reciprocity, it is unclear to me how the majority can affirm this constitutionally deficient written order.

the defendant filed a subpoena to obtain police reports before the preliminary examination. *Id.*, ¶ 1.

¶ 61. We stated, "This is a discovery case, notwithstanding the defendant's protestations to the contrary." *Id.*, ¶ 18. We determined that the subpoena should be quashed because "the scope of discoverable materials is set out in statute and compliance with the statute will be enforced by the court." *Id.*, ¶ 77 n.17. The lesson from *Schaefer* is clear. If something looks like discovery, it is governed by the discovery statute.

¶ 62. The policy reasons advanced by the majority for allowing the court to compel the production of *McMorris* evidence are based on the rationale underlying discovery. The majority explains, "Besides questions of admissibility[4] there was also the question of how the State would be able to investigate and rebut evidence that was revealed for the first time at trial." Majority op., ¶ 16.

¶ 63. This is a general discovery rationale. The purpose of discovery is to promote "the ascertainment of the truth and ultimate disposition of the lawsuit in accordance therewith[.]" *Monier v. Chamberlain*, 221 N.E.2d 410, 417 (Ill. 1966). Through discovery, mutual knowledge of all the relevant facts will be achieved. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

---

[4] The majority acknowledges that a court can satisfy its responsibility to vet *McMorris* evidence prior to its admission, even if the evidence is not produced prior to trial. *See* majority op., ¶ 21: "The question before us in this case is primarily a question of timing: whether a circuit court has the authority to order a defendant to disclose any planned *McMorris* evidence prior to trial, so that the factors involved in determining the evidence's admissibility can be weighed not only prior to admission, but also prior to trial."

¶ 64. In addition to relying upon a discovery rationale, the majority cites to criminal discovery cases. It relies primarily upon three United States Supreme Court opinions: *Williams v. Florida*, 399 U.S. 78 (1970); *Wardius v. Oregon*, 412 U.S. 470 (1973); and *Taylor v. Illinois*, 484 U.S. 400 (1988). In all three cases, the issue before the Court was the constitutionality of a discovery rule.

¶ 65. The majority asserts that *Williams* is "analogous" to this case. Majority op., ¶ 5. In *Williams*, the Florida Rules of Criminal Procedure required a criminal defendant to provide notice of an alibi defense or risk discovery sanctions.[5] The Court said, "Florida's notice-of-alibi rule is in essence a requirement that a defendant submit to a limited form of pretrial discovery by the State whenever he intends to rely at trial on the defense of alibi." 399 U.S. at 80.

¶ 66. The second case relied upon by the majority, *Wardius*, addressed a similar state rule.[6] At the outset of the opinion, the Court framed the issue as follows:

---

[5] *See* Fla. Rule Crim. Proc. 1.200, reprinted in *Williams v. Florida*, 399 U.S. 78, 104 (1970) (appendix to opinion of the Court) ("[A] defendant in a criminal case who intends to offer evidence of an alibi in his defense shall, not less than ten days before trial or such other time as the court may direct, file and serve upon such prosecuting attorney a notice in writing of his intention to claim such alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as is known to defendant or his attorney, the names and addresses of the witnesses by whom he proposes to establish such alibi.")

Wisconsin has a similar rule, which is enumerated in the criminal discovery statute, Wis. Stat. § 971.23(8).

[6] *See* Or. Rev. Stat. § 135.875 (1973) ("If the defendant in a criminal action proposes to rely in any way on alibi evidence, he

"This case involves important questions concerning the right of a defendant forced to comply with a 'notice-of-alibi' rule to reciprocal discovery." 412 U.S. at 471. The Court commented: "nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve the[] goals" of reducing surprise and enhancing the fairness of a criminal trial. *Id.* at 474.

¶ 67.   The third case, *Taylor*, is also a discovery case. There, the trial court excluded a witness's testimony because the defendant "fail[ed] to identify [the] defense witness in response to a pretrial discovery request."[7] 484 U.S. at 401. The question before the Court was whether "the Sixth Amendment bars a court from ever ordering the preclusion of defense evidence as a sanction for violating a discovery rule." *Id.* at 406. The Court concluded that the Constitution did not create an absolute bar to discovery sanctions.

¶ 68.   The majority relies on the analysis of these cases, yet it denies that the issue presented here is a discovery issue, governed by the discovery statute: "We do not view this case as presenting the kind of discovery question [other cases were] addressing." Majority op., ¶ 24.

---

shall, . . . file and serve upon the district attorney a written notice of his purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence.").

[7] The Illinois Supreme Court Rules require a defendant to disclose a list of witnesses that he intends to call at trial. This rule is one of several enumerated under the heading "Discovery." Illinois Supreme Court Rules, Article IV: Rules on Criminal Proceedings in the Trial Court, Part B. Discovery, Rule 413: Disclosure to Prosecution.

¶ 69. To the contrary, I conclude that the issue presented to this court is squarely a discovery issue, and it is governed by the discovery statute.

II

¶ 70. We have long held that that there is no general right to discovery in criminal cases and that the court should not order discovery on a case-by-case basis:

> Wisconsin does not recognize a right [of a] defendant to a pretrial discovery of the prosecution's evidence. If we are to adopt a pretrial discovery procedure in criminal cases in this state we deem it would be best done by a rule of court or by legislative action rather than on a case to case basis by the court.

*Miller*, 35 Wis. 2d at 478.

¶ 71. Subsequent to *Miller*, the legislature adopted a comprehensive system of rules governing criminal discovery. *See* Wis. Stat. § 971.23. After its enactment, Wisconsin courts affirmed the principle that pretrial discovery is prescribed by the statute. *See, e.g., Lynch*, 82 Wis. 2d at 466 (vacating a court's order permitting a defendant to examine the State's files because it "would operate, in essence, as a discovery device, and would therefore be inconsistent with [the] principle" that "discovery procedures should be determined by statute or by rule of court").

¶ 72. The criminal discovery statute provides limited and reciprocal discovery requirements. Upon demand, a defendant "must disclose" the following: (1) a list of the names and addresses of witnesses the defendant intends to call at trial; (2) relevant written or recorded statements of the named witnesses including

expert reports that the defendant intends to produce at trial; (3) the criminal records of the named witnesses; and (4) physical evidence the defendant intends to produce at trial. Wis. Stat. § 971.23(2m). *McMorris* evidence is not on the list.

¶ 73. Aside from the mandatory disclosures enumerated above, "[o]ur discovery statute does not require a defendant to divulge the details of his or her own case." *State v. Konkol*, 2002 WI App 174, ¶ 17, 256 Wis. 2d 725, 649 N.W.2d 300. The statute provides just one exception to this rule. If the defendant wishes to present an alibi defense, "the defendant shall give notice to the district attorney . . . stating particularly the place where the defendant claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known." Wis. Stat. § 971.23(8)(a).

¶ 74. On the issue of notice of self-defense and disclosure of *McMorris* evidence, however, the statute is silent. Therefore, under the principle stated in *Miller* and reaffirmed in *Lynch*, notice and disclosure of this evidence is simply not required.

¶ 75. Finding no authority in the statute for the compelled pretrial disclosure of *McMorris* evidence, I determine that the court was without authority to enter the order. The court of appeals got it right when it determined that a circuit court's authority to exercise control over the mode and order of presenting evidence does not provide the authority to require pretrial discovery that it would otherwise not be permitted to require under the Wisconsin criminal discovery statute. *See McClaren*, 313 Wis. 2d 398, ¶ 1.

## III

¶ 76. Today, the majority permits a circuit court to compel pretrial disclosure of any manner of evidence, citing the court's inherent authority to take the necessary steps to avoid potential obstacles to a smoothly run trial. *See* majority op., ¶ 3. The majority's attempt to fit a discovery issue into an inherent authority box has broad implications.

¶ 77. A court may exercise its inherent authority to ensure "that the court functions efficiently and effectively to provide the fair administration of justice." *City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 749–50, 595 N.W.2d 635 (1999). However, invoking inherent powers in order to trump legislatively enacted public policy should be a last resort. *See id.* at 755.

¶ 78. Here, the legislature has made policy choices regarding the evidence that is subject to compulsory pretrial disclosure. It permits compulsory pretrial disclosure of certain types of evidence, including alibi evidence, but it is silent about *McMorris* evidence. Nevertheless, the majority permits a circuit court to circumvent these legislative policy choices by invoking the court's inherent authority to ensure that it functions effectively and efficiently to provide for the fair administration of justice.

¶ 79. I acknowledge that *McMorris* evidence may pose special difficulties for the court. Perhaps the rationale underlying the statutory notice-of-alibi requirement applies to *McMorris* evidence as well. There may be good policy reasons for a rule requiring pretrial discovery of this type of evidence. If so, however, it would be preferable for the legislature to promulgate a new rule. The advantage of a rule, rather than an

opinion justified on the basis of the court's inherent authority, is that it could be strictly limited to this type of evidence.

¶ 80.  The majority attempts to limit its holding to cases involving similar facts: "Under the circumstances presented here, where McClaren seeks to introduce *McMorris* evidence in support of a self-defense claim, the circuit court has the authority" to order pretrial disclosure of the evidence. *See* majority op., ¶ 28. However, the majority's attempt to narrow the scope of its holding is undermined by its invocation of the court's broad inherent powers. Consequently, neither its rationale nor its holding is limited. to *McMorris* evidence.

¶ 81.  For the above stated reasons, I respectfully dissent.